Good morning everyone. We have five cases on the docket this morning, three of them being argued and two of them being submitted on the briefs. I will just note for the record the cases that are being submitted on the on the briefs. The first case on the calendar for oral argument this morning is number 05-1272 Kersey v. Under Secretary of Commerce. Mr. Kersey? Yes, sir. You're going to be arguing the case? Yes, sir. You can step up whenever you're ready and you're familiar with the, understand how the lighting system works and all? I do, your honor. Okay, and you just want to confirm you've reserved five minutes for rebuttal time, is that correct? Okay. Okay, well you can begin whenever you're ready. May it please the court. I think it's important for me to begin with the genesis of this matter, which began with my divorce in the Vermont Family Court in 1991. This was a jurisdiction where I was not admitted to practice. In 1992, my ex-wife filed a contempt motion in the Vermont Family Court on the basis that I had not disclosed all of my gross income. She said that the amount paid to me by my clients, which was reimbursed by my clients, should be included in my gross income. When I appeared in the Vermont Family Court and explained to them that the net effect of that was zero, the judge ordered me in contempt. I was manacled, put in the Vermont Correctional Institution until I paid the amount that was in dispute. In 1994, the Vermont attorney for my ex-wife wrote to all jurisdictions where I'd been admitted to practice, including the United States Patent Office, pointing out that I had been found in contempt in the Vermont Family Court. In 1995, I was hired by the United States Air Force as a conditional patent advisor, but my employment there didn't last very long. It was only from March 1995 to September 1995, and the reason for that was that the chief of the division decided to retire, and he named me as the best candidate to succeed him. Well, this annoyed his assistant. This is all documented. Let me ask you one thing. Going back, you mentioned something about, I thought there was some connection with Massachusetts. I'm coming to that. You're quite right. This is all documented as well. So he set out to fire me from my position, and he succeeded. So in September of 1995, I was discharged from the Air Force, and I was a civilian advisor to the Air Force. Right. In 1996, after I'd been discharged, the man who succeeded to the position of chief asked the man who had supervised me to file a complaint in the Patent Office, accusing me of a conflict of interest. Well, nothing further happened until 1996. In 1996, the Massachusetts system reacted to the complaint that had been fired by the Vermont attorney for my ex-wife, pointing out that I had been in contempt of the Vermont Family Court. Now, Massachusetts, under Massachusetts law, they cannot impose disparate decision, and the case that was closest to mine was more serious than mine, but in that case, and they imposed a private reprimand, but in that case, they said that the reason for the private reprimand was because this man had attempted to comply with the contempt order, and they said, I had not made any attempt, and this is completely contrary to fact, as evidenced in the record, but because they said I hadn't made any attempt to comply, they imposed a three-month suspension. In Massachusetts. In Massachusetts, right. It was at this point in the year 2000 that the Office of Enrollment and Discipline decided to institute disciplinary proceedings against me in four counts. The first count was that I had violated conflict of interest rules while I was employed by the Air Force. The second count was that I failed to disclose that I had been disbarred in Massachusetts, which was not true. The third count was that I failed to disclose that I had been disbarred by the United States Court of Appeals for the District of Columbia, which also was not true. The fourth count was that I had failed to cooperate with the Patent Office in its investigation, which also was not true, as you will see in the record, because the second and third charges that I had been disbarred was false. They amended those to say that I had been suspended. But that was accurate. Yes, that was accurate. I had been suspended by Massachusetts for three months. In the year 2001— And it was a reciprocal kind of suspension. It was a reciprocal—that's right. It was a reciprocal disciplinary proceeding. In the District of Columbia. No, Massachusetts. But I thought you were also suspended—isn't it in the record? Well, I'm coming to the rest of the record. No, I didn't want to interrupt. The only thing is— No, please do. No, the only—because I realize that these points are important to you, Mr. Kersey, but we have to kind of accept what happened in these various situations and understanding that you feel you weren't properly treated. But the fact of the matter is, you raised certain contentions here, and I don't want you to run out of time to get to the points you raised in your brief. I mean, this is all background information, which I understand you want to put before us. Well, I think this background information is very important, and the points that I raised in my brief are in the brief, and so they are available to you from the brief. Okay, well, you're free to use your time as you wish. Well, in the year 2001, the administrative law judge decided—made a decision in my case and imposed a reprimand. He said he did this in view of extenuating circumstances in my case. But also in the year 2001, reciprocal discipline in New York and New Jersey caught up with me, and New Jersey imposed a censure and New York imposed a reprimand based on reciprocal discipline. But the director of employment and discipline for the patent office was not satisfied with the reprimand by the administrative law judge and decided to appeal the decision of the administrative law judge. The director of employment and discipline had three attorneys working on the case, but the appeal was not made in time under section 10.155, as I point out in my brief. Well, was there an extension granted for filing that appeal? Yes, there was, but I contend that no extension was proper. Why is that? Because 10.155 is quite clear. It says within 30 days, if an appeal is to be made, it should be made. And my position is supported by a letter that I received from the administrative law judge, Judge Nissen, who had decided my case. In fact, that's part of the record. The letter of the administrative law judge is part of the record. And he pointed out that I was correct, that since the appeal could not be made in 30 days if required by 10.155, that the appeal was improper. In addition to that, I have cited decisions of this court. In particular, I cited Monzo v. Department of Transportation of the Federal Aviation Administration. The citation is in my brief. It's a decision of this court, 1984, which says that the time to file an appeal is statutory, mandatory, and jurisdictional. I also cited another decision of this court, a 1991 case, which is in my brief. It's P-0 versus the Office of Personnel Management, which says that the deadline for filing an appeal or petition for review may not be waived. Now, an attempt to give an extension is an attempt to waive this 30-day requirement. At least, that's the position that I'm taking. And as I said, my view of this was confirmed by the view of the administrative law judge in the letter that he wrote, which is a part of the documentation for this case. I believe that that pretty – well, let me make a couple more points. I see I have two minutes left. First place, the appeal – according to 10.155, the appeal is supposed to be made to the commissioner. Now, the Patent Office has never complied with these regulations. Instead of appealing to the commissioner, they appealed to the director of the United States Patent Office. The decision in a case of such an appeal is supposed to be made by the commissioner. The decision in my case was not on this appeal, on this improper appeal. The decision was not made by the commissioner. The commissioner delegated it to the general counsel, the man who supervised the attorneys who were bringing the case against me. That surely is a conflict of interest. Was it the commissioner or the director who delegated it to the general counsel? It was the director who delegated it to the general counsel. Wasn't there a change in the statute designating the director as the head of the Patent Office? To this day, the regulations that apply, 10.155, 10.16, all of these regulations still refer to the commissioner. And the excuse of the Patent Office on this reference to the commissioner is, well, we're going to get around to amending this, but we haven't done it yet. So, isn't the statute supersede the regulations? Well, the statute says that a reference to the commissioner of patents and trademarks shall be the director of the United States Patent Office. But that's not what the federal regulation says. The federal regulation doesn't say the commissioner of patents and trademarks. It simply says the commissioner. And as you well know, Your Honor, the Patent Office has two commissioners. It has three commissioners. It has the commissioner for patents. It has the commissioner of patents and trademarks. It has just the commissioner. Where does the director fit in? The statutory requirement of the director. Isn't the director the head of the United States Patent and Trademark Office? I see that my time is up, Your Honor. But the director of the United States Patent Office is the Undersecretary of Commerce. What I'm saying is the regulations that apply to these proceedings refer only to the commissioner. And until the United States Patent Office gets around to putting the appropriate designations that it wants in these regulations, then it should be held accountable. I'm reserving my five minutes for rebuttal. Thank you. You ran over a bit, but it was in response to questions. So you'll have your full five minutes of rebuttal. We'll hear from the government now. Mr. Johnson? Yes, Your Honor. Whatever points you want to cover, you might just address in particular the two substantive arguments that Mr. Kersey made. I will, Your Honor. May it please the Court. The evidence clearly shows that the appeal by the OED director was timely. According to the rules, when a party wants to appeal a decision from an ALJ, he has to do so within a certain amount of time, 30 days. The OED director filed a motion for an extension of time. And prior to the deadline, that motion was granted by the USPTO director. And the director indicated that the OED director's appeal could be filed by December 21st of O-1. And that's exactly what the OED director did. And that's what the evidence shows. Mr. Kersey cites a number of cases dealing with statutory deadlines. Those cases indicate that when there is a statutory deadline, this Court is restrained from extending that deadline. Here, we're talking about a regulation which establishes deadlines. And our regulations also provide for motions to be filed to extend those particular timeframes. And that's just what the OED director did when he moved to extend the date in order to file his appeal. With respect to his argument that the appeal was not filed with the proper individual, this Court is correct. There was a change in the title of the head of the agency from commissioner to director. And at the time that the OED director filed his appeal, he did so with the OED director based upon the change in the title of the head of the agency. Has the regulation been amended to reflect that position? Unfortunately, not yet. But the PTO is in the process of amending all of its OED rules. And those are found in Part 10. So shortly after all of the rules have been changed, they will accurately reflect director of the USPTO in the appropriate sections. But the regulations still reflect the commissioner's patents rather than the director of the Patents and Trademark Office. They do, Your Honor. It's just that the change has not occurred yet. But as this Court has pointed out, the statute does supersede whatever the regulations say. And additionally, Mr. Kersey indicates that there's currently a commissioner of patents and a commissioner of trademarks. However, back when the appeal was filed, the individuals who were under the head of the agency were actually called assistants. They weren't called as they are now commissioner of patents and commissioner of trademarks based upon the changes which occurred in the statute back in 1999. If there are no further questions, then... What is your response to Mr. Kersey's complaint with respect to the delegation of the adjudication to the General Counsel's Office? Yes, Your Honor. On the substance of it. As I understand it, his argument is it was improper to delegate this to the office that was also, in essence, representing the director or OED in the proceedings. Well, according to 35 U.S.C. section 32, after a notice and a hearing, the director may impose some form of discipline against the practitioner. And under 35 U.S.C. section 3B, 3B, Congress has given the director the authority to delegate certain responsibilities. And here, that's just what the PTO director did. He delegated the responsibility of disciplinary proceedings to the General Counsel. And that's in the record. Now, with respect to any conflicts of interest, as the district court found, Mr. Kersey did not argue that issue before the PTO. He did so for the first time before the district court. But regardless, as the district court found, there is no evidence in the record of an actual conflict of interest. The standard for a decision-maker being disqualified is to show that the decision-maker's mind was irrevocably closed. The opposite was actually here. The OED director filed his appeal requesting an increase of a suspension from a rubber band to a one-year suspension. The USPTO director did not rubber-stamp that. What he did was he issued a six-month suspension. Mr. Kersey, before the ALJ, argued, based upon his age and his economic situation, that he should not receive a one-year suspension. The USPTO director considered that mitigating factor that Mr. Kersey argued and did not impose a one-year suspension. He imposed a six-month suspension. So the evidence clearly shows that the USPTO director's mind was open, and it was not closed at any point. Thank you, Mr. Kersey. Mr. Kersey, as I said, you have your full five minutes of rebuttal if you wish to use it. Now the applicable statute is 35 U.S.C. section 32, and it says the director, it tells what the director may do. The director may appoint somebody to conduct the hearing, that is the initial hearing. There is nothing in section 35, in 35 U.S.C. section 32, that allows the director to designate the general counsel to make the decision that he's supposed to make. All that 35 U.S.C. section 32 allows him to do is to direct somebody who's in the patent office, such as the general counsel, to conduct the initial hearing. As I said, there is nothing in there that allows him to designate the general counsel to supersede him and take his place and overrule the administrative law judge. In addition, what the director of the Office of Employment and Discipline wanted was not a one-year suspension, he wanted a two-year suspension. And I think it's perfectly clear that the general counsel, well, the general counsel had to be influenced by the men who worked for him, who were arguing for this two-year suspension. So the consequence was that he couldn't, he had to impose some kind of suspension. But, is there any further questions of the court? No. The other thing that I'd like to say is that these decisions of the court concerning the need to file a timely appeal should apply throughout the entire chain over which this court has jurisdiction and supervision. For example, it was clear that a petition has to be filed within the time limit specified. I simply do not understand why section 10.155 is subject to amendment or is subject to an extension. There is nothing in Title 37 that allows an extension of that time. Extensions can be allowed for other reasons, of course, but there is nothing in, as a matter of fact, it's quite clear. It says, in fact this is acknowledged in the brief of the appellee on page 9, an appeal from the ALJ's initial decision must be filed within 30 days. They conceded it must be filed within 30 days. Well, it wasn't filed within 30 days. Incidentally, the appellee contends in their brief further on page 9, they say, Cursi boldly argues that the appeal was untimely. However, Cursi did not present any facts and there are none to support his conclusory argument. This is completely contrary to the letter that was received from Judge Nissen who pointed out that the appeal was not filed properly It's contrary, in my opinion, to these decisions of this Court, the Monzo case and the Peanut case. Does the Court have any further questions? I don't believe so, Mr. Cursi. Thank you, Your Honor. Thank you, Mr. Johnson. Thank you. The case is submitted.